MILLER BREWING CO., Plaintiff-Respondent,†

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS,
Equal Rights Division, Defendant-Appellant,

Becky KOZERA, Defendant-Co-Appellant.

Court of Appeals

*No. 94–1628. Submitted on briefs July 11, 1995.—Decided
July 9, 1996.*

(Also reported in 553 N.W.2d 837.)

†Petition to review granted.

For the defendant-appellant Department of Industry, Labor and Human Relations, Equal Rights Division, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Richard Briles Moriarty*, assistant attorney general.

381

For the defendant-co-appellant Becky Kozera the cause was submitted on the briefs of *Michael J. Edmonds* of Milwaukee.

For the plaintiff-respondent Miller Brewing Company the cause was submitted on the briefs of *Ely A. Leichtling* and *Carmella A. Huser* of *Quarles & Brady*, of Milwaukee.

Amicus Curiae brief was filed by *Marianne Goldstein Robbins* of *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.*, of Milwaukee, for Wisconsin State AFL-CIO.

Amicus Curiae brief was filed by *Patricia J. Meunier* of *Schneidman, Myers, Dowling & Blumenfield*, of Milwaukee, for Wisconsin Federation of Nurses and Health Care Professionals.

Amicus Curiae brief was filed by *Robert K. Sholl* and *Susan B. Stein* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S.C.*, of Milwaukee, for Wisconsin State Council of the Society for Human Resource Management.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SULLIVAN, J.   At issue in this case is whether a claim under the Wisconsin Family and Medical Leave Act (FMLA), *see* § 103.10, STATS.,[1] challenging an employer's refusal to allow an employee to substitute her paid sick leave for the six-weeks of unpaid family

---

[1] The claim in this case arose in 1990; thus, we use the version of § 103.10, STATS., in effect at that time. Section 103.10, STATS. (1989-90), provides in relevant part:

> **(3)** FAMILY LEAVE. (a) 1. In a 12-month period no employe may take more than 6 weeks of family leave under par. (b)1 and 2.
> 2. In a 12-month period no employe may take more than 2 weeks of family leave for the reasons specified under par. (b)3.

leave provided for by § 103.10(5)(b) of the FMLA, is preempted by § 301 of the federal Labor Management Relations Act (LMRA), *see* 29 U.S.C § 185(a)(1990).[2] We conclude that the state law claim is not preempted by 301 of the LMRA. Accordingly, we reverse the circuit court judgment holding otherwise and remand the

---

3. In a 12-month period no employe may take more than 8 weeks of family leave for any combination of reasons specified under par. (b).

(b) An employe may take family leave for any of the following reasons:

1. The birth of the employe's natural child, if the leave begins within 16 weeks of the child's birth.

2. The placement of a child with the employe for adoption or as a precondition to adoption under s. 48.90(2), but not both, if the leave begins within 16 weeks of the child's placement.

3. To care for the employe's child, spouse or parent, if the child, spouse or parent has a serious health condition.

(c) Except as provided in par. (d), an employe shall schedule family leave after reasonably considering the needs of his or her employer.

(d) An employe may take family leave as partial absence from employment. An employe who does so shall schedule all partial absence so it does not unduly disrupt the employer's operations.

. . . .

(5) PAYMENT FOR AND RESTRICTIONS UPON LEAVE. (a) This section does not entitle an employe to receive wages or salary while taking family leave or medical leave.

(b) An employe may substitute, for portions of family leave or medical leave, paid or unpaid leave of any other type provided by the employer.

[2] Section 301 of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1990).

matter to the circuit court for resolution consistent with this opinion.

## I. BACKGROUND.

### A. *Stipulated historical facts.*[3]

Becky Kozera is a laboratory technician employed by the Miller Brewing Company, a Milwaukee-based corporation. On March 4, 1990, she gave birth to a daughter. Prior to the child's delivery, on February 9, 1990, Miller Brewing approved a disability leave for Kozera, expecting her to return to work on April 16, 1990, six weeks after the anticipated delivery date of her child. Kozera used paid reserve sick leave for her disability leave as allowed under her union contract.

On March 12, 1990, Kozera verbally requested an additional six-weeks of parental family leave pursuant to § 103.10(3), STATS. She also requested the use of six-weeks of paid reserve sick leave for use during her family leave. As of April 16, 1990, Kozera had 952 hours of paid reserve sick leave under the terms of her union contract.

Under the union's collective bargaining agreement, employees are only able to use paid reserve sick leave when they are in fact sick and they have submitted a doctor's note acceptable to the company. Kozera was not disabled or in any way unable to work because of a health condition from April 16, 1990, to May 29, 1990. Further, she did not submit a doctor's note regarding proof of disability after April 16, 1990.

---

[3] The parties stipulated to the facts before the administrative law judge. The administrative law judge's decision adopted these stipulated facts.

Miller Brewing granted Kozera six-weeks of family leave from April 16, 1990, through May 29, 1990; however, it did not allow her to use paid reserve sick leave during her family leave. Miller Brewing had never allowed an employee to use paid reserve sick leave for any reason except personal illness or injury.

### B.   Procedural history.

Kozera filed a complaint with the Equal Rights Division of the Wisconsin Department of Industry, Labor, and Human Relations, alleging that Miller Brewing had violated the FMLA when it did not allow her to use her paid reserve sick leave during the six-weeks of family leave. The Equal Rights Division issued an initial determination finding probable cause to believe Miller Brewing had violated the FMLA by its denial.

After a hearing on June 8, 1990, an administrative law judge found that Miller Brewing had violated § 103.10(5)(b), STATS., by refusing to allow Kozera to substitute paid reserve sick leave for unpaid family leave between April 16 and May 29, 1990. The administrative law judge then awarded Kozera the six-weeks of paid sick leave and reasonable attorney's fees incurred by her.

Miller Brewing then petitioned the Milwaukee County Circuit Court for judicial review of the administrative law judge's decision. The circuit court concluded that Kozera's state law claim under the FMLA was federally preempted by § 301 of LMRA, and reversed the administrative law judge's decision. Pursuant to Chapter 227, STATS., Kozera appealed the circuit court judgment to this court.

## II. ANALYSIS.

The only issue before us is whether 301 of the LMRA preempted Kozera's state law claim under the FMLA. We reject the circuit court's ruling and conclude that the claim is not preempted.

### A. *Standard of review.*

■

Kozera appeals from the circuit court judgment pursuant to § 227.58, STATS.[4] In reviewing her claim, however, we review the administrative agency's decision, not the circuit court's. *Jocz v. DILHR*, 196 Wis. 2d 273, 289-90, 538 N.W.2d 588, 592 (Ct. App. 1995). "Nonetheless, we apply the same standard and scope of review as that which the [circuit] court employed when it reviewed the agency's decision." *Id.* at 290, 538 N.W.2d at 592. Further, "[t]he subsections of § 227.57, STATS., delineate the specific scope of review we use to resolve each issue." *Id.*

■

Federal preemption of a matter deprives a state court or agency of subject matter jurisdiction. *Dykema v. Volkswagenwerk AG,* 189 Wis. 2d 206, 210, 525 N.W.2d 754, 756 (Ct. App. 1994), *cert. denied,* 116 S. Ct. 60 (1995). This question raises an issue of law and therefore the general scope of our review is set forth by § 227.57(5), STATS.[5] Further, when the decision of an

---

[4] Section 227.58, STATS., provides:

**Appeals.** Any party, including the agency, may secure a review of the final judgment of the circuit court by appeal to the court of appeals within the time period specified in s. 808.04(1).

[5] Section 227.57(5), STATS., provides:

The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a

agency deals with the agency's "subject matter jurisdiction to decide an issue, our review is *de novo* and we will not give any deference to the agency's decision on that issue." *Jocz,* 196 Wis. 2d at 291, 538 N.W.2d at 593.

## B. *Federal preemption.*

Whether § 301 of the LMRA preempts a state law claim is not a simple question; it requires reference to federal law. *International Ass'n of Machinists & Aerospace Workers, IAM Local 437 v. United States Can Co.,* 150 Wis. 2d 479, 487, 441 N.W.2d 710, 713 (1989), *cert. denied,* 493 U.S. 1019 (1990). The issue is further clouded because in drafting the LMRA, Congress "did not state explicitly whether and to what extent it intended § 301 of the LMRA to preempt state law." *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 208, 105 S. Ct. 1904, 1910, 85 L.Ed.2d 206, 213 (1985).[6]

In a series of cases, the United States Supreme Court has discussed § 301's preemptive effect on state law claims. *E.g., Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403-06, 108 S. Ct. 1877, 1880-81, 100 L.Ed.2d 410, 417-19 (1988). "The common thread running through the Court's analyses is that 'an application of state law is preempted by § 301 . . . only if such application requires the interpretation of a collective

correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law.

[6] We also note that the drafters of the FMLA were concerned with the question of federal preemption. *See* Gabrielle Lessard, Comment, *Conflicting Demands Meet Conflict of Laws: ERISA Preemption of Wisconsin's Family and Medical Leave Act,* 1992 WIS. L. REV. 809, 819-20 (discussing state legislature's awareness of possible federal preemption of the FMLA).

bargaining agreement.'" *Leher v. Consolidated Papers, Inc.,* 786 F. Supp. 1480, 1483-84 (W.D. Wis. 1992) (citation omitted). As has been noted, "[f]ederal labor policy does not prevent states from granting substantive rights independent of the collective bargaining agreement to its workers, as long as the claim can be resolved without interpreting the agreement itself." *Id.* at 1484 (citation omitted).

The first step in determining whether § 301 preemption applies is to examine the elements of Kozera's claim to determine whether we must interpret her collective bargaining agreement with Miller Brewing. *Id.* at 1484. The elements of her claim under § 103.10 of the FMLA are: (1) that she was covered by the FMLA at the time of her request; (2) that she requested a substitution for family leave; (3) that Miller Brewing provided the type of leave requested; (4) that she had accrued the substituted leave; and (5) that Miller Brewing denied her request for substituted leave. *Id.* at 1485 (citing unpublished decisions of the Wisconsin Department of Industry, Labor, and Human Resources interpreting the FMLA).

It is undisputed that Kozera was covered by the FMLA, that she requested a substitution for family leave, and that Miller Brewing denied her request for substituted leave. The controversy in this case is whether we must interpret Kozera's collective bargaining agreement with Miller Brewing to determine the type of leave Miller Brewing provided and whether that leave had accrued to Kozera.

Miller Brewing argues that § 301 preempts because Kozera's claim is founded directly upon the collective bargaining agreement and that resolution of her state law claim depends upon an analysis of the agreement. Kozera argues, however, that her claim is

based solely on her statutory right to substitute paid sick leave for unpaid family leave, not on an interpretation of her collective bargaining agreement. We agree with Kozera.

In *Livadas v. Bradshaw,* 114 S. Ct. 2068, 129 L.Ed.2d 93 (1994), the Supreme Court observed "that § 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law . . . ." *Id.* at 2078, 129 L.Ed.2d at 109. Kozera's claim is just such a non-negotiable right.

Under § 103.10(5)(b), STATS., "[a]n employe[e] may substitute, for portions of family leave . . . paid or unpaid leave of any other type provided by the employer." We agree with Miller Brewing that we must refer to the collective bargaining agreement to determine whether Miller provided Kozera any type of "paid or unpaid leave." Section 103.10(5)(b), STATS. This reference does not, however, invoke § 301 preemption. If a collective bargaining agreement's terms are unambiguous, "the bare fact that [the] . . . agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas,* 114 S. Ct. at 2078, 129 L.Ed.2d at 110.

The collective bargaining agreement unambiguously provides for reserve paid sick leave to be accumulated by Miller Brewing employees governed by the agreement.[7] We need not interpret this unambigu-

---

[7] Article VII, § 4 of the collective bargaining agreement is entitled "Illness and Injury," and provides in relevant part:

(A) Each employee shall be credited with a reserve of twenty (20) workdays' illness and injury leave with pay per contract year. It is understood that the days of leave taken shall be applied against and in lieu of the weekly benefits provided for employees in Article VIII, Section 2(C). Any unused leave under this Section at the end of the contract year shall be accumulated and carried over into the succeeding contract year but the maximum leave to be so

ous provision of the agreement. Hence, it is clear that Miller Brewing did provide the type of substituted leave that Kozera requested under the FMLA.

Further, we need not interpret the agreement to determine whether the reserve paid sick leave had accrued to Kozera. The plain language of the agreement provides the conditions of sick-leave accrual, and both parties stipulated that Kozera had accrued 952 hours of paid reserve sick leave under the terms of the agreement. We need go no further to analyze Kozera's claim. "Lifting this fact from this agreement does not require interpretation of the agreement." *Leher,* 786 F. Supp. at 1485.

### III. SUMMARY.

■

In short, we conclude that Kozera's claim derives solely from § 103.10(5)(b), STATS. This minimum labor standard expressly permits substitution of unpaid family leave for the type of paid sick leave provided by Kozera's collective bargaining agreement. We need not interpret Kozera's collective bargaining agreement with Miller Brewing to analyze her claim. Kozera has proven each element of her claim under the FMLA, and this claim is not preempted under § 301 of the LMRA. Accordingly, the trial court erred when it reversed the administrative law judge's decision awarding Kozera the six-weeks of paid reserve sick leave and attorney's

---

accumulated shall not exceed one-hundred-sixty (160) working days.

. . . .

(D) All illness and injury leave earned after June 1, 1977, under this Section up to a maximum of one-hundred-sixty (160) days that has not been used for the purposes set forth herein may be accumulated and shall be paid to the employee at the time of retirement at the rate in effect at that time.

fees. We reverse the trial court judgment and remand the matter to the trial court for resolution consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.