STRANCH, Circuit Judge, concurring in part and dissenting in part.
Congress understood that the Employee Retirement Income Security Act (ERISA), the Family and Medical Leave Act (FMLA), and similar state leave laws like the Wisconsin Family and Medical Leave Act (WFMLA) serve separate but complementary roles in governing employment leave. By honoring the distinction between accrued paid leave and other types of non-accrued benefits, like short-term and long-term disability benefits, these federal and state statutes have co-existed for nearly twenty-five years, each serving its particular purpose. The distinctions I draw here preserve that balance and allow these intertwined statutes to continue to serve their separate functions.
The ERISA preemption claim brought is based on a common type of ERISA plan— one that includes a number of different benefits within one plan — here including *572 Your Time Benefits (covering vacation, sick and personal time), short-term disability (STD) and long-term disability (LTD). The challenge before us is specifically to substitution of unpaid WFMLA leave with paid STD benefits. The challenge, therefore, presents a narrow issue — whether ERISA preempts the substitution of unpaid WFMLA leave with STD benefits under the employer’s ERISA Plan when a requesting employee no longer meets the Plan’s definition of disability. The issue before us thus arises at the intersection of Wisconsin state law and ERISA.
Viewing this case through the narrow lens presented, I would hold that ERISA does not expressly preempt the WFMLA substitution provision because that provision does not relate to an ERISA plan by reference to, or connection with, the plan. Further, the substitution provision is not conflict-preempted because the statute does not establish a state regulation that makes it impossible for Nationwide to comply with ERISA law and state law at the same time. To the extent a Wisconsin employee seeks to utilize the administrative process of the Wisconsin Department of Workforce Development to obtain STD benefits under Nationwide’s ERISA Plan, however, that state process is preempted under ERISA because it establishes an alternative enforcement mechanism barred by ERISA. On this, I concur with the majority.
To explain where I disagree with the majority opinion, I must begin with the WFMLA and describe how Wisconsin appellate courts have interpreted that statute. Those courts’ explanations of the statutory mechanism shine much-needed light on the ERISA preemption analysis.
A. Substitution of Leave under the WMFLA
Wisconsin employees may take an unpaid leave of absence for the birth of a child. Wis. Stat. § 103.10(3)(b)(l) & (5)(a). The WFMLA specifically permits an employer to provide “employees with rights to family leave ... which are more generous to the employee,” § 103.10(2)(a), and in addition “[a]n employee may substitute, for portions of family leave[,] ... paid or unpaid leave of any other type provided by the employer,” § 103.10(5)(b). The Wisconsin Department of Workforce Development promulgated a regulation to clarify what the statutory substitution provision means by “leave of any other type provided by the employer.” The regulation provides: “At the option of the employee, an employee entitled to family ... leave under the act may substitute, for any leave requested under the act, any other paid or unpaid leave which has accrued to the employee.” Wis. Admin. Code DWD § 225.03(1) (emphasis added).
We are not lacking in guidance as to what type of leave provided by the employer is authorized for substitution by the WFMLA. More than twenty years ago, the Wisconsin Supreme Court explained the meaning of the phrase “leave which has accrued to the employee.” In Rich-land School District v. Department of Industry, Labor, and Human Relations, 174 Wis.2d 878, 498 N.W.2d 826, 832 (1993), the court concluded that the state regulation properly interpreted the statutory phrase “leave ... provided by the employer” to mean “any type of leave that has accrued ” to the employee. Id. at 832 & n. 7, 835. Only the kinds of leave that an employee accumulates over time “are available for substitution.” Id. at 832. “Leave which is indefinite or which cannot be quantified at the time of the FMLA leave request is not ‘leave ... provided by the employer’ under [the] FMLA.” Id. The Wisconsin Supreme Court has thus distinguished “indefinite, incalculable leave” *573 from leave that “accrues into specified, calculable amounts of time.” Id. Only the latter may be substituted for leave requested under the WFMLA.
The employee in Richland School District asked to substitute eighteen calculable days that had accrued to him under a collective bargaining agreement (CBA). Id. at 828, 832. Although the school district argued that the CBA’s conditions for using the leave were not satisfied, the Wisconsin Supreme Court concluded that the leave was sufficiently definite and quantifiable to be substituted for unpaid WFMLA leave, specifically noting that the employee “was not asking to substitute any form of non-accrued, discretionary or contingent leave time which the school district might give him upon request.” Id. at 832-33. The court emphasized that the Wisconsin legislature intended to restrict substitution under the WFMLA to circumstances in which the employee “has accrued reimbursable leave.” Id. at 836. Thus, § 103.10(5)(b) “increases the opportunities for a state employe[e] to use existing accrued paid leave, as opposed to creating additional paid leave.” Id.
In Miller Brewing Company v. Department of Industry, Labor and Human Relations, 210 Wis.2d 26, 563 N.W.2d 460, 462 (1997), the Wisconsin Supreme Court outlined what an employee must prove to establish a violation of the WFMLA substitution provision, § 103.10(5)(b). A plaintiff must show that: “(1) she was covered by the FMLA at the time she requested leave; (2) she requested a substitution for family leave; (3) [the employer] provided the type of leave requested; (4) the substituted leave had accrued to her; and (5) [the employer] denied the substituted leave.” Id. (emphasis added). Echoing Richland School District, the court said that “[a]n employer must provide leave that is definite and quantifiable in order for such leave to be available for substitution under the FMLA.” Id. at 462 n. 6. Because a CBA granted the plaintiff 952 hours of paid reserve sick leave that was “clearly definite and quantifiable,” the court ruled that it did not need to “interpret the CBA in order to determine that [her] paid leave had accrued to her and was the type of leave available for substitution under the FMLA.” Id. at 467. Accordingly, the plaintiffs claim was not preempted by § 301 of the Labor Management Relations Act. Id.
In Kraft Foods, Inc. v. Wisconsin Department of Workforce Development, 242 Wis.2d 378, 625 N.W.2d 658, 662 (Wis.Ct. App.2001), the issue was whether a sick leave benefit under a CBA constituted accrued paid leave that could be substituted for family leave under the WFMLA substitution provision, § 103.10(5)(b). The state agency determined that leave is accrued within the meaning of Wis. Admin. Code DWD § 225.03 if “it arises from a contract, is specified and quantifiable, has a ‘draw-down’ feature, and is the type of leave that an employee is allowed to accumulate over time.” Kraft Foods, Inc., 625 N.W.2d at 663. The CBA’s sick leave benefit met the criteria, so the agency ruled that the claimant could substitute accrued sick leave under the CBA for unpaid WFMLA leave. Id.
The Wisconsin Court of Appeals concluded that the agency reasonably interpreted and applied the term “accrued,” noting that the amount of sick leave was specified and quantifiable, the benefit had a draw-down feature, and the sick leave accumulated over time. Id. at 663-64. Significantly, the court observed that, “[although the sick leave benefit in the parties’ collective bargaining agreement may resemble a disability insurance policy, we agree with the department that any such resemblance is irrelevant. The issue *574 is whether the sick leave benefit meets the requirements as a substitute leave under the WFMLA, and, as we have discussed, the department reasonably concluded that it does.” Id. at 664 (footnote omitted). The court pointed to the accumulation of leave over time “by renewing annually and increasing with an employee’s seniority.” Id. The fact that an employee had to be sick for several days before receiving paid sick leave benefits did not render the benefit “indefinite” or “incalculable.” Id.
Turning to the issue before us, the Wisconsin appellate courts have never held that the substitution provision of the WFMLA allows an employee to replace unpaid family leave with STD benefits under an employer’s ERISA plan if the employee does not meet the plan’s definition of disability. In light of the governing precedents, it is doubtful that the Wisconsin appellate courts would so hold because STD benefits do not satisfy their requirements for the type of leave that may be substituted. See Richland Sch. Dist., 498 N.W.2d at 832; Kraft Foods, Inc., 625 N.W.2d at 664. In contrast to definite and quantifiable vacation days and sick leave, STD benefits are discretionary and contingent depending on the existence and continuation of an employee’s physical or mental disability. STD benefits may become available under Nationwide’s ERISA Plan if the employee satisfies the definition of disability set forth in the Plan, but STD benefits generally do not accumulate over time, they are not based on an employee’s seniority, and they do not have a “draw-down” feature. STD benefits simply do not “accrue” to the employee as the Wisconsin Supreme Court understood that term in Richland School District and throughout its case law.
The WFMLA, as interpreted by Wisconsin courts, operates in much the same way as the federal FMLA. The WFMLA predated the passage of the FMLA and is fully consistent with congressional intent at the time the FMLA was enacted into law. The FMLA generally allows eligible employees who are employed by covered employers to request up to twelve work weeks of unpaid leave each calendar year for reasons specified in the statute, one of which is the birth of the employee’s child. 29 U.S.C. § 2612(a)(1)(A). Although leave under the FMLA is unpaid leave, Congress provided that “[n]othing in [the FMLA] ... shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements” of the FMLA. 29 U.S.C. § 2653. This point was sufficiently important for Congress to place it within its own statutory section rather than list it in 29 U.S.C. § 2601(b) as one of the purposes of the FMLA.
To satisfy the requirements of the FMLA, employers must “comply with any collective bargaining agreement or any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established” under the FMLA, but an employee’s FMLA rights “shall not be diminished by any collective bargaining agreement or any employment benefit program or plan.” 29 U.S.C. § 2652. In consonance with §§ 2652 and 2653, Nationwide adopted a maternity leave policy more generous than the unpaid leave provisions of either the FMLA or the WFMLA. Nationwide provides a new mother with six or eight weeks of paid leave for the birth of a child.
The majority errs in stating that the FMLA “undisputedly does not mandate the substitution of employer-provided leave benefits the way the Wisconsin Act does.” Maj. Op. at 569. The WFMLA does not “mandate” substitution; instead, the statute expresses in permissive terms that “[a]n employee may substitute, for *575 portions of family leave[,] ... paid or unpaid leave of any other type provided by the employer.” Wis. Stat. § 103.10(5)(b) (emphasis added). The statute and governing regulations allow the employee to elect substitution of any other paid or unpaid leave that has accrued to the employee, but it does not require such substitution.
The FMLA’s substitution provision is arguably less protective of the employee than the WFMLA’s substitution provision because Congress provided that “[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided [for the birth of a child] for any part of the 12-week period” of leave. 29 U.S.C. § 2612(d)(2)(A) (emphasis added). The WFMLA substitution provision does not allow employers to require employees to substitute accrued paid leave for unpaid leave under the WFMLA. Wis. Stat. § 103.10(5)(b).
The WFMLA substitution provision also creates greater employee leave rights than those under the FMLA because the employee may elect to substitute “paid or unpaid leave of any other type provided by the employer.” Aurora Med. Grp., v. Dep’t of Workforce Dev., 236 Wis.2d 1, 612 N.W.2d 646, 650, 657 (2000). As I previously explained, however, the Wisconsin courts have defined the type of leave that may be substituted under the WFMLA provision as definite, quantifiable leave that accrues to the employee over time and has a draw-down feature. Richland Sch. Disk, 498 N.W.2d at 832; Kraft Foods, Inc., 625 N.W.2d at 664. This characterization .of the type of leave that may be substituted under the WFMLA closely matches the FMLA’s description of leave that may be substituted: “accrued paid vacation leave, personal leave, or family leave of the employee.” 29 U.S.C. § 2612(d)(2)(A). STD benefits do not fall within the federal or the state characterization.
These federal and state family leave statutes intersect with ERISA and with one another but each statute serves a particular purpose, and they have coexisted for a quarter of a century. Congress provided in ERISA that “[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States.” 29 U.S.C. § 1144(d). In determining whether a construction of ERISA “impairs” the operation of another federal statute, like the later-enacted FMLA, the question is whether that construction “would frustrate the goal” of the second law. Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 102,103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); see also Humana Inc. v. Forsyth, 525 U.S. 299, 311, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999) (“Shaw thus supports the view that to ‘impair’ a law is to hinder its operation or ‘frustrate [a] goal’ of that law”). “Congress is presumed to enact legislation with knowledge of the law and a newly-enacted statute is presumed to be harmonious with existing law and judicial concepts.” Raney v. Fed. Bureau of Prisons, 222 F.3d 927, 932 (Fed.Cir.2000) (citing Cannon v. Univ. of Chi, 441 U.S. 677, 696-98, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)). Thus, when Congress enacted the FMLA, we must presume that Congress intended for its new statute to exist harmoniously with the preexisting ERISA statute and with the WFMLA. Consequently, to the extent possible, we must interpret and harmonize these statutes and accompanying case law to effectuate congressional and state intent.
B. ERISA Preemption
In light of the complementary pathways that have been maintained for many years *576 in the case law flowing from federal and state family leave statutes and ERISA, I turn to ERISA preemption in our particular context.
A primary concern of Congress in enacting ERISA was “the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds.” Mass. v. Morash, 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989). To alleviate this concern, Congress “established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee’s expectation of the benefit would be defeated through poor management by the plan administrator.” Id. Ordinary benefits paid to employees like wages (for example, vacation leave), that are “typically fixed, due at known times, and do not depend on contingencies outside the employee’s control ... present none of the risks that ERISA is intended to address,” and these kinds of employee benefits have traditionally been regulated by the States. Id. at 115, 119, 109 S.Ct. 1668. “Absent any indication that Congress intended” ERISA to cover routine leave payments, the Supreme Court has been “reluctant to so significantly interfere with ‘the separate spheres of governmental authority preserved in our federalist system.’ ” Id. at 119, 109 S.Ct. 1668 (quoted case omitted).
ERISA expressly preempts “any and all State laws insofar as they may now or hereafter relate to an employee benefit plan.” 29 U.S.C. § 1144(a). The term “State law” includes “all laws, decisions, rules, regulations, or other State action having the effect of law, of any State.” 29 U.S.C. § 1144(c)(1). The purpose of ERISA preemption is to avoid conflicting federal and state regulation in the creation of nationally uniform administration of employee benefit plans. Helfman v. GE Grp. Life Assur. Co., 573 F.3d 383, 390 (6th Cir.2009).
Although the preemption provision, § 1144(a), may appear to be clear and unambiguous, it is “not a model of legislative drafting.” John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 99, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (internal quotation marks omitted). And while the breadth of the “relate to” clause is apparent, “infinite relations cannot be the measure of pre-emption.” N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). We must “look ... to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive.” Id. A “law ‘relates to’ an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan.” Shaw, 463 U.S. at 96-97, 103 S.Ct. 2890. “Where a State’s law acts immediately and exclusively upon ERISA plans ... or where the existence of ERISA plans is essential to the law’s operation ... that ‘reference’ will result in pre-emption.” Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997). But Congress did not intend that ERISA would preempt a state law that another federal law encourages, see Travelers Inc. Co., 514 U.S. at 665-66, 115 S.Ct. 1671, because such preemption would effectively impair the federal law in violation of 29 U.S.C. § 1144(d). See Shaw, 463 U.S. at 102, 103 S.Ct. 2890. See also Metro. Life Ins. Co. v. Mass., 471 U.S. 724, 744 n. 21, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).
The WFMLA substitution provision does not act immediately or exclusively upon Nationwide’s ERISA plan for STD benefits, nor is the existence of such an *577 ERISA plan essential to the statute’s operation. See Dillingham Constr., N.A., Inc., 519 U.S. at 825, 117 S.Ct. 832. The substitution provision states only that a Wisconsin employee “may substitute, for portions of family leave[,] ... paid or unpaid leave of any other type provided by the employer.” Wis. Stat. § 103.10(5)(b). No reference is made in the statute to ERISA plans that provide STD benefits, nor must an ERISA plan for STD benefits exist for the statute to operate. As the district court recognized, the substitution provision applies to both ERISA and non-ERISA benefit plans, and under Dillingham Construction, the provision does not “refer to” ERISA plans. Sherfel v. Gassman, 899 F.Supp.2d 676, 698 (S.D.Ohio 2012).
My colleagues rely heavily on Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 147, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001), but Egelhoff is distinct from the case before us. There, the Supreme Court held that ERISA preempted a state statute because “[t]he statute binds ERISA plan administrators to a particular choice of rules for determining beneficiary status. The administrators must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents.” Id. Understandably, the Supreme Court ruled in that context that the state statute “implicates an area of core ERISA concern.” Id. But here, the Wisconsin substitution provision does not have the same connection to Nationwide’s ERISA plan as the state statute had to the plan at issue in Egelhoff.
The law may be preempted by ERISA if it has a “connection with” ERISA plans. Dillingham Constr., 519 U.S. at 325, 117 S.Ct. 832. This inquiry requires two showings: “(1) the law at issue must mandate (or effectively mandate) something, and (2) that mandate must fall within the area that Congress intended ERISA to control exclusively.” Assoc. Builders & Contractors v. Mich. Dep’t of Labor and Economic Growth, 543 F.3d 275, 281 (6th Cir.2008). Here, Nationwide has not proved that the WFMLA’s substitution provision mandates any action in connection with the STD Program in Nationwide’s ERISA Plan or that such mandate falls within the area that Congress intended ERISA to control exclusively. First, the substitution provision speaks in permissive language; second, it authorizes substitution with paid or unpaid leave that has accrued to the employee as defined by Wisconsin courts. Thus, contrary to the conclusions of the majority and the district court, the substitution provision of the WFMLA does not “(1) mandate[ ] or effectively mandate[ ] the substitution and payment of STD benefits (2) which are provided pursuant to an ERISA plan, the payment of plan benefits being within the area that Congress intended ERISA to control exclusively.” Sherfel, 899 F.Supp.2d at 698. The substitution of accrued paid leave for unpaid WFMLA leave is the type of leave with which ERISA is not concerned. See Morash, 490 U.S. at 115, 119, 109 S.Ct. 1668. Therefore, the substitution provision does not, as the majority and the district court hold, interfere with nationally uniform plan administration because the statute itself does nothing to interfere with national uniform administration of Nationwide’s ERISA Plan. I do not find express preemption applicable.
ERISA preemption may also be implied if compliance with both federal and state regulations is impossible or if the state law is “an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Boggs v. Boggs, 520 U.S. 833, 844, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997) (internal quotation marks omitted). But it is not impossible for Nationwide to comply with the WFMLA substitution provision and federal ERISA law at *578 the same time. The substitution provision does not mention ERISA plans or purport to control an employer’s STD program for employees. Importantly, no Wisconsin appellate court has ever held that the substitution provision may be applied to force an ERISA STD benefits plan to provide paid disability benefits in lieu of unpaid leave under the WFMLA.
Nationwide contends that the decision of the administrative law judge (ALJ) in the Gerum case demonstrates the impossibility of Nationwide’s compliance with both ERISA law and the WFMLA, but Nationwide chose to settle Gerum’s claim and that controversy is no longer pending. Even if the ALJ’s unappealed decision remains on the books, the trial proof established that the decision is not binding on any other Wisconsin ALJs, and any Wisconsin appellate court likely would give no deference to the ALJ’s statutory interpretation because the decision concerned a first-impression issue of law. See Volvo Trucks N. Am. v. Wis. Dep’t of Transp., 323 Wis.2d 294, 779 N.W.2d 423, 428 (2010).
Contrary to some of the arguments before us, the Wisconsin Supreme Court’s decision in Aurora Medical Group, while instructive, does not settle this matter. Aurora held that ERISA did not preempt the WFMLA substitution provision where an employee substituted accrued paid sick leave for unpaid statutory family leave. 612 N.W.2d at 650-52, 657. The parties stipulated in that case that Aurora’s Sick Pay Plan was a welfare benefit plan within the meaning of ERISA, but the Wisconsin Supreme Court declined to render any opinion about whether Aurora’s sick leave plan was actually an ERISA plan. Id. at 650 n. 6. Aurora certainly did not address the issue presented here of whether ERISA preempts the WFMLA substitution provision where the employee wishes to substitute discretionary and contingent ERISA Plan STD benefits for unpaid WFMLA leave.
Neither the WFMLA substitution provision itself nor any binding Wisconsin state decision presently requires Nationwide to pay STD Plan benefits to one of its employees in substitution of unpaid WFMLA leave. Accordingly, conflict preemption is not required to alleviate existing and conflicting obligations.
I do agree, however, that a Wisconsin employee’s attempt to utilize the state administrative process to obtain the payment of STD benefits under Nationwide’s ERISA Plan as a substitute for unpaid WFMLA leave is preempted. Congress intended for ERISA’s comprehensive civil enforcement scheme, 29 U.S.C. § 1132(a), to serve as the exclusive means for enforcing rights under ERISA, thus preempting alternative enforcement mechanisms. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). See also Aetna Health Inc. v. Davila, 542 U.S. 200, 209, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) (“[a]ny state-law cause of action that duplicates, supplements, or supplants ERISA’s civil enforcement remedy conflicts with clear congressional intent to make that remedy exclusive, and is therefore pre-empted”). Nationwide’s STD benefits are controlled by specific ERISA Plan terms, definitions, and laws. As I have previously shown, STD benefits do not appear to be similar in kind to the definite, quantifiable leave accrued to an employee over time that Wisconsin has said may be substituted for unpaid family leave. The Plan’s STD benefits are more like the “non-accrued, discretionary or contingent leave time” that Wisconsin case law differentiates from substitutable time. See Richland Sch. Dist., 498 N.W.2d at 832. No Wisconsin court has held that such leave may be substituted.
*579 Further, an employee who requests payment of STD benefits under Nationwide’s ERISA Plan seeks “to recover benefits due to him under the terms of his plan.” 29 U.S.C. § 1132(a)(1)(B). Congress intended that ERISA’s civil enforcement statute would provide the sole remedy for an employee to obtain STD benefits under an ERISA Plan. See Davila, 542 U.S. at 210, 124 S.Ct. 2488. Characterizing STD benefits provided under an ERISA Plan as a form of discretionary, contingent leave that is regulated by ERISA law does not impair the substitution provisions of the FMLA or the WFMLA because those statutes govern only accrued paid leave. 29 U.S.C. § 2612(d)(2)(A); Wis. Stat. § 103.10(5)(b); Wis. Admin. Code DWD § 225.03(1); Richland Sch. Dist., 498 N.W.2d at 832.
Because Congress expressly provided that any employee’s cause of action to recover non-accrued ERISA STD benefits must be pursued under § 1132(a)(1)(B), alternative state enforcement mechanisms are preempted. Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp., 399 F.3d 692, 702 (6th Cir.2005). To this limited extent, I would hold that Nationwide is entitled to declaratory relief and fiduciary instruction.
If Wisconsin wishes to require employers to pay disability benefits in substitution for unpaid family leave, moreover, the method to accomplish that goal is not to require employers to alter their existing ERISA plans. Instead, the State may require employers to provide benefits through a separately administered disability plan, one that is not covered by ERISA but that is “maintained solely for the purpose of complying” with state “disability insurance laws.” 29 U.S.C. § 1003(b)(3); Shaw, 463 U.S. at 108, 103 S.Ct. 2890 (“A State may require an employer to maintain a disability plan complying with state law as a separate administrative unit” and such a plan “would be exempt” from ERISA coverage under § 1003(b)(3)). As the Supreme Court explained, “[i]f the State is not satisfied that the ERISA plan comports with the requirements of its disability insurance law, it may compel the employer to maintain a separate plan that does comply.” Id. But it does not appear that the WFMLA substitution provision, as currently drafted, qualifies as such a “disability insurance law.”
C. Permanent Injunctive Relief
Finally, I turn to the permanent injunction entered by the district court. Nationwide did not prove continuing irreparable injury to warrant injunctive relief against Wisconsin state officials charged with implementing the WFMLA. I do not agree with the district court that Nationwide established through proof that it is “at considerable risk of having to defend against WFMLA administrative claims for Plan STD benefits based on the WFMLA substitution provision.” Sherfel, 899 F.Supp.2d at 708. There is no pending, active case against Nationwide raising the issue of substitution of STD benefits for unpaid WFMLA leave. Moreover, Nationwide’s proof provided only the speculation of a witness that this issue “conceivably ... is an ongoing problem,” R. 111 Page ID 2275, and the ALJ decision issued in Gerum’s case was not appealed and is nonbinding under the proof and Wisconsin law. See Kallstrom v. City of Columbus, 136 F.3d 1055, 1068 (6th Cir.1998) (“Injunctive relief is a discretionary remedy which courts traditionally abstain from providing unless the controversy is ripe for judicial resolution.”) Because Nationwide fell short in its proof of continuing irreparable harm, I would hold that the injunction cannot stand.
*580 D. Conclusion
In summary, Wisconsin law permits employees to substitute definite, calculable leave that has accrued to them, such as vacation or sick leave, for unpaid WFMLA leave. The Wisconsin appellate courts have never interpreted the WFMLA to allow or require the substitution of ERISA Plan STD benefits for unpaid family leave. ERISA does not expressly preempt the WFMLA substitution provision because that provision does not relate to Nationwide’s ERISA Plan — it does not refer to, or have a connection with, the Plan. Because the WFMLA substitution provision does not establish a state regulation that makes it impossible for Nationwide to comply with ERISA law and state law at the same time, the substitution provision is not conflict-preempted. The substitution provision is preempted, however, to the extent that a Wisconsin employee seeks to utilize the state administrative process to obtain STD benefits under Nationwide’s existing ERISA Plan because that state process establishes an alternative enforcement mechanism barred by ERISA. Nationwide is entitled to limited declaratory relief on this ground. Because Nationwide did not prove continuing irreparable harm, however, injunctive relief is unwarranted.
My analysis would lead me to affirm in part and reverse in part the district court’s grant of declaratory relief and fiduciary instructions. I would vacate the permanent injunction and remand the case to the district court for further proceedings. I therefore respectfully concur in part with and dissent in part from the majority opinion.